v. Fransimo. I'm not sure if I'm pronouncing that right. You did. You pronounced it perfectly, Your Honor. Great. So just give me one second to set up and then we'll jump right in. Thank you. Mr. Lickmacher, I'm saying your name right, right? You're doing well with pronunciations today, Your Honor. I've heard a lot of bad things. Mr. Lickmacher, you've reserved three minutes for rebuttal. So that gives you then seven minutes to start. Okay. If you please, the Court. Evelyn Tennyson was shot in the leg while she was pregnant at a Father's Day barbecue in Syracuse. She's not accused of a crime. She had done nothing wrong. At the same date, her fiancé and the father of her yet unborn child were shot and killed by the same officer. Now, we dismissed voluntarily the excessive force case. Clearly, Francimone didn't intentionally, the cop, didn't intentionally fire at Tennyson. What she did was horribly reckless. And the Court has held... If you give me a second, I'm sorry about that. Well, first of all, it was confirmed that she was shooting in the direction that Tennyson was hit. Tennyson was standing with her left leg out trying to get in the car. Francimone was to her right and behind her. I don't think the facts are really in dispute about that. I mean, I think that everybody would acknowledge it's not 100% clear whether or not Francimone's bullet is the one that struck Ms. Tennyson. But even assuming it was, the District Court concluded that that wouldn't be enough to support either a Fourth or a Fourteenth Amendment claim. And so why don't we start with the Fourth Amendment claim because the law seems to be that there has to be a seizure and there can't be a seizure without an intentional firing. Unless your client, Ms. Tennyson, was the target, then there can't be a seizure. May I? Yes. We intentionally, we voluntarily, I should say, dismissed the Fourth Amendment claim. Our contention is she was incredibly reckless, shooting with no worry about what was going on with the public. In fact, she wound up hitting a car several times and even their expert agrees with that and there were people in that car. It was a crowded area. There was a lot going on. And she ran in, didn't identify herself, didn't say put down the gun. We have several witnesses who confirmed that she did none of these things. And then she began shooting in the direction of the car. Now, were there shooters by the car? Yes. There was one on each side. Well, if we're moving now to the Fourteenth Amendment claim then, so then I guess the issue is whether or not, you know, the government action was rationally related to a legitimate government objective. That's the standard, right? Do I have that right? In sum and substance, yes. There are not many cases on point, Your Honor, but there are a couple and we did cite them. There's one Northern District case and there is one Second Circuit case. Well, that's what I'm quoting, which is EDRE. I'm not sure if I'm pronouncing it, E-D-R-E-I. I don't know how to pronounce that one either, Your Honor. But in any event, I mean, so why would returning fire against gunmen who were basically they let off like 15 shots in an incredibly crowded area, why would returning fire not be rationally related to a legitimate government objective? I'm going to answer that with first the fact. Nobody hit anybody with a bullet except for Frantz Amon, okay, and that is relevant to this. Now, returning fire is fine, but you can't recklessly just aim into a crowd. It's really amazing she didn't hit the kids in the car. I mean, she did strike the car more than once, and Flossie, their expert, Edward Flossie, excuse me, admits that she fired in the direction of Tennyson. But you haven't established a substantive due process violation. You have to show that she had some level of intentionality or cite us a case where recklessness constitutes a substantive due process violation, and I didn't see such a case. Well, there aren't a lot of cases right on point. You know, I do civil rights, and substantive due process walks through the door once every 15 years. The cases all indicate that police action in a high-pressure, fast-moving situation, we allow for a range of behavior in those very intense, you know, like a high-speed chase or in a hostage situation where everyone's under a lot of pressure, and that you have to show some level of intentionality more than recklessness to make on a substantive due process claim. So, I mean, we might agree with you that it was reckless, even in the face of all this gunfire and concern that the officer had about people being shot, and that this turned out badly, but I don't understand what you're relying on to support your claim. Well, it was more than reckless. It was a complete disregard for human safety, and if anything, a policeman's job is to protect the public. It's not to run in recklessly and start shooting in the direction of people. That would be a very scary rule, if you allow this to be the rule. It would be a very scary rule that an officer can run in and start shooting in the direction of people, some of whom are innocent, not involved in anything. I understand her shooting at the shooters. I have no problem with that. I mean, that's probably her job here. You know, after ordering them to put the guns down, identifying herself as a cop, and witnesses said she did none of that. But in this case, she— That wouldn't change your argument, though, if she had said police and then started firing, right? You'd still say that was just extremely reckless and that was a substantive due process violation. Might have changed what happened if she had done that. It might have. You know, somebody might have said, the police are here. Let's get out of Dodge. You know, that might have concluded it. You know, but this is more than mere recklessness. This is a total disregard for the public safety. That is what the problem is here. I've never seen a case where a cop was this reckless. I've done a couple hundred of these. I mean, she's aimlessly just— What are we to make of— I mean, I feel like you haven't addressed this idea that this was an emergency, fast-moving situation and people other than the officer are shooting. And as Judge Carney was alluding to, we could debate sort of the potential recklessness of it, but the idea that this is what shocks the conscience and that we don't have cases that are— or at least I don't know that you've cited cases that are analogous to saying, oh, this constitutes shocking the conscience. It's not as if she just went up into a crowd and started shooting. There was shooting going on when she arrived at the scene, isn't there? You have one now, this one, and it should be resolved this way. An officer should not be able to shoot into a crowd of people, some of whom are not involved in anything illegal, some of whom do not threaten the public in any way, and just recklessly shooting aimlessly at the car. She did. She hits the car a few times. She has bullets under the car. As I said, their own expert, not to be redundant, says the bullet went in her direction. She could have shot him, and she did. We believe strongly she did. Interesting that bullet's not recovered, but that's another situation. But this is not a simple matter of, okay, may have acted a little out of hand. This is a complete disregard for the safety of the public. And if substantive due process isn't meant to protect that kind of scenario, I don't know what it's there for. This is completely distinguishable from Lewis, Lewis v. Sacramento, which is, you know, a car chase with no intention when you're chasing somebody to kill them. When you fire a gun, there's an expectation that is deadly force, you know, per se. There is an expectation that that may cause people to, you know, get hit, people to be killed. You know, that's the difference here between this and Lewis. Lewis is completely off point. I understand Lewis is an important decision.  What about Medeiros where the hostage was shot during a rescue effort? Yeah. You know, it happens. You know, it does happen, but I don't think it's a completely analogous situation where somebody's shooting at a car with people in it, with several people around, you know. And incidentally, you know, she can't be sued for being a bad shot. She doesn't hit any of the shooters, which is pretty interesting. You know, she does hit a pregnant woman, you know, who's trying to get into a car, who does not have a gun, and that's a jury question. You know, was she beyond reckless? Did she have a total disregard for the safety of the public, which is what she did, and which is why this should be a legitimate substantive due process case, and it should go forward. All right. Well, you have reserved three minutes for rebuttal, so we'll now hear from Mr. Powers. Thank you, Your Honor. Thank you. May it please the Court. John Powers. I represent Officer Fran Simone. I did want to note that we've raised in our papers what we contend are multiple meritorious grounds to affirm. I'm going to focus on the issue that the Court's taken up in oral argument. This is one of the grounds that Judge Santis relied on in her decision, which is the 14th Amendment standard under County of Sacramento v. Lewis. I would also note that it was my impression from the papers that only the 14th Amendment claim was appealed. The Fourth Amendment claim was voluntarily discontinued by the plaintiff, and it's my assumption that it is not on appeal. I did note that you brought it up, Your Honor. Well, it wasn't completely clear to me, I guess, from the brief. Okay. And I think counsel cleared that up in his argument. So counsel has acknowledged that, and he stated clearly that Officer Fran Simone did not intentionally fire at Ms. Tennyson. And we dispute that Officer Fran Simone was even there when she was hit. But we're going to assume arguendo that it was one of her five shots that struck Ms. Tennyson in the calf. What County of Sacramento v. Lewis teaches us is that there's a specific standard of fault that's required in a 14th Amendment substantive due process case. It's a narrow claim. It's not a font of tort law. It requires purpose to harm or intent to harm. That's how it's been referred to in the case law. Isn't it? I mean, what about the Kingsley case? Doesn't that assert a standard a little different from what you've said? It's not necessarily intent to harm, but purposeful or knowing or, in extreme circumstances, recklessness. So I guess I'm challenging you a little bit on what the court standard is.  And so Kingsley's in 2015, and it's a situation of force against a pretrial detainee. Right. But it doesn't limit it to that context, to the Fourth Amendment context. And, in fact, in subsequent cases, I think in entry itself, it says that that standard applies for all excessive force claims, including under the Fourth Amendment. And, Judge, I'm going to challenge you on that statement, and I'm going to read some language from the decision at Kingsley. Because in Kingsley v. Henry. You're not challenging me on the statement, though, that the subsequent case of Airdrie says Kingsley applies to Fourteenth Amendment. Oh, I agree that Kingsley applies. Okay. And I agree that Airdrie was a Fourteenth Amendment case. But for the reasons that I'm about to get into, Kingsley and Airdrie were not about a threshold state of mind question. They were about a follow-on question of objective unreasonableness and what's the standard to apply to meet this objectionable unreasonableness standard. And what the Supreme Court said in Kingsley was, and this is a quote, there are, in a sense, two separate state of mind questions. The first concerns the defendant's state of mind with respect to his physical acts. And it goes on to say in relation to the consequences of those acts on the world. And what the Court is referring to is they're referring to this standard of fault in County of Sacramento. In fact, Kingsley cites the County of Sacramento. The Court goes on to say, with respect to that first state of mind question, purposeful knowing or possibly reckless conduct is sufficient. That's a call-out to County of Sacramento, which said in certain circumstances, recklessness is enough. Where there is a time to deliberate, time for unhurried judgment, time for reflection. In those situations, recklessness is enough. The Court goes on to say, and does not reach the question of what mental state is required because it states, the officers do not dispute that they acted purposely or knowingly towards the plaintiff. And that was the case. So the Court skipped over the first question and got to the second question, which was, is the conduct objectively unreasonable such that it violates the 14th Amendment? Went through the factors. But you don't get to that test until you get through the first gate. Is the required mental state there? So in Eddrey, though, the Court in Eddrey said, in the narrow ruling, we hold that purposefully using an LRAD, the device that would harm hearing, in a manner capable of causing serious injury to move nonviolent protesters to the sidewalk, violates the 14th Amendment under clearly established law. So it focused the use of purposefulness on using a dangerous device in a manner capable of causing serious injury. To me, that tracks firing a gun, which is an instrument capable of causing serious injury, into a crowd. Didn't really inquire beyond that as to purposefulness. It was using the device in a manner capable of causing serious injury. So why doesn't that exactly fit these circumstances? Well, in Eddrey, this Court didn't address that threshold question. In other words, it was going through the objective reasonableness test. But in answer to your question, the situation is a little different in Eddrey than it is in a law — a police officer facing an active shooter. Right? This was a case where they had this — I'll call it a sonic weapon, right? The LRAD. It's going to affect everyone within a cone of effectiveness. Within a cone of effectiveness. There's probably a chance for deliberation before you use it. There's probably a chance for reflection. So you're distinguishing it on the facts as opposed to what the Court said. Well, it's not clear. Firing into a crowd purposefully is also a manner capable of causing serious injury. Agreed. And I think that you can say that if you're firing the LRAD and it has this 45-degree cone and you know that, that you're purposefully directing its effects at everybody within that cone. It's not the same case when you're firing at an armed shooter, which has been stipulated in this case, and you accidentally shoot someone who's nearby. But this was a crowd, right? And it was at night. So there was gunfire. But to say that she was firing at a specific shooter, maybe I missed something in the record. It wasn't clear to me that she had an individual who she could see and she was targeting. I'm going to cite you to page 849 of the record. Okay. This is the response to the statement of material undisputed facts. This is fact number 28. This is, quote, Officer Frantz-Simone discharged five rounds in the direction of the individuals firing weapons next to the black sedan in the Stonecourt parking lot south off of Tully Street. Okay. That was admitted to by the plaintiff. That's a stipulation in that case that must be accepted as true. Those five rounds, one of which is alleged to have struck Ms. Tennyson, were directed at the shooters. There is no testimony, no witness, none cited by a plaintiff, has testified that Officer Frantz-Simone was directing her fire at Ms. Tennyson. In fact, none of the witnesses see Ms. Tennyson get shot. Well, I think Mr. Lickmarker is conceding that Frantz-Simone was not shooting purposely at Tennyson. Right. But the issue is whether or not she was shooting at the assailants. And so it seemed to me that the record says there were two shooters. They're at the rear of a car and that the shots fired by Frantz-Simone are all in that direction near a black sedan. Indeed, that's what plaintiff's own forensic expert concluded. Right. But the forensic evidence indicates, in other words, the bullet strikes, indicates that her firing was directed at active shooters. Now, the idea that she shot at the crowd, let's address that because this is important. There's one witness. Shooting into the crowd might be different from it. If you have 15 people around and one shooter or three shooters in there, you're still aiming at 15 people. Agreed. Agreed. But I would argue that there is no, there's no evidence in the record that Officer Frantz-Simone was directing her fire at anything other than the. . . No, no, of course not. Right. The active shooters. And that's what the record says. To the extent that there's one witness that testified that Officer Frantz-Simone, it looked to her like she was shooting at a crowd. That was Teixeira Rodriguez-Rijo. Not multiple witnesses. That was one witness. And if you look at the record, I'm going to give you the pages. 860, 1017, and 1018. And Judge Sanis recognized this in her decision. Ms. Rijo did not see what happened in the Stonecourt parking lot. When she said that it looked to her like Officer Frantz-Simone was shooting at a crowd, it's the second use of force against Mr. Porter that she was referring to when they were running west towards a park called Skiddy Park. That's when she said, oh, it looked to me like she was aiming at the crowd. Now, that doesn't create a question of fact about what happened in the parking lot. The record on the first use of force is limited to the stipulation to what counsel agrees, an oral argument happened, which was she's shooting at the shooters. Now, if she did it poorly, if she did it negligently, even if she did it recklessly, in other words, maybe she's not aiming. Maybe her intent is to shoot the shooters, but she's not really aiming. Reckless, that's not enough. Look at your own decision in Madero v. O'Connell. The law hasn't changed since then. That armed gunman, Officer O'Connell, fired five shots into a vehicle at an armed gunman. There was an innocent driver right to the left of the gunman. There was a teenage boy right to the right on either side of the gunman. The boy was shot, and he ended up dying and brought to suit. Fourteenth Amendment claim dismissed on the merits, not based on qualified immunity, on the merits, because recklessness and firing at the gunman with an innocent person on it immediately on either side was not enough. That's the law that was in existence in 2016. Kingsley and Eadry, Eadry's a 2018 decision, they don't address this standard of fault, this mental state requirement. They skip over to the next question. They're also in different circumstances. When you're using force against a pretrial detainee, this is Kingsley, he's in a cell. He's not a threat to anyone. You have time for deliberation, unhurried judgment. So it's not the same situation. Same with Eadry. New York Police Department, they have the sonic weapon. They have peaceful protesters. They're going to make a choice what and how they disperse the protest. They have time for deliberation, unhurried judgment. That's not the same situation as here. But even if you disagree with me, that maybe Eadry changes things. Officer Frantzmo is still entitled to qualified immunity. The state of the law in 2016 was based on County of Sacramento, and it was based on Madaris. Those cases are still good law today. They've not been overruled. In fact, there was a case. It's not cited in our papers. It happened after we submitted our papers. June of this year, Fifth Circuit, it's, I believe, Parker. Parker v. Mississippi Department of Public Safety. Fifth Circuit, gunman holds up his three-month-old infant as a human shield, and officer is exchanging fire with the gunman, shoots the infant, infant dies. The Fifth Circuit applies County of Sacramento exactly as I'm suggesting it should be applied, even if it's extremely reckless to shoot. And when a baby is being used as a human shield, that's not enough under the demanding 14th Amendment standard. That's the state of the law. County of Sacramento is good law. Even if you disagree with me, qualified immunity applies. Even if we disagree with you about what? The merits. In other words, there's no 14th Amendment claim as a matter of law. Well, you know, maybe this is, maybe this could be, maybe recklessness could be enough in this situation. Even if you disagree with me, the state of the law in June of 2019 was based on Medeiros and County of Sacramento, and that's what a reasonable officer would be on notice of, and Officer Frensman would be entitled to qualified immunity in any event. Judge Sanis also correctly found that. Unless you have any other further questions, I would rest on my papers. All right. Thank you very much. We'll now hear from Mr. Lippmacher for three minutes of rebuttal. Now, because Sacramento has been mentioned so much, I just want to read a short quote from Sacramento. High-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under U.S. Constitution Amendment 14. That is not relevant to this matter. It is so far off point. Yeah, the facts are different, but it's about split-second cases where police officers have to make decisions and have to do dangerous things. And so driving a car at high speed is as dangerous, in some ways more dangerous, than firing a gun, right? I'm not sure about that last point, but they're both dangerous. But what's the difference, I guess, is the question. Well, when you fire a gun, you know you're using deadly force. When you drive fast, you may get to your destination intact. Well, you may fire a gun and hit the right person. I mean, it's not clear to me. They're obviously different facts, but I guess the question is, does County of Sacramento basically say where police are engaging in a reasonable and legitimate government objective, we cut them slack even if what they do puts other people in harm's way? The fact that it's a reasonable government objective does not change the fact that the mode in which this was implemented was beyond reckless. It was extremely dangerous. What would we be saying today? But the same is true in County of Sacramento, right? It was really dangerous. I don't think it was the same level of danger in a crowded parking lot with a lot of people in a car where somebody is shooting a gun at that car. If she had killed five kids and all the other facts were the same here, would we have a case? Would there be a substantive due process claim? I'm worried about this ruling. I'm very concerned. I'm very concerned that some officers are going to say, hey, I don't have to aim that well. I don't have to be careful. If I know I got one shooter there, if I shoot ten people next to him, it's okay. And that's how broadly— But that's Medeiros, isn't it? I don't know that it is. I mean, it didn't inflict that kind of harm. Medeiros did it. It did not. You know, I mean, this is beyond simple recklessness. This woman ran in without doing anything an officer is supposed to do and started firing extremely recklessly, hitting this car, hitting this poor woman, which even Judge Sanis said a jury could reasonably conclude that Frantzimo shot her. But be that as it may, it is a dangerous proposition that we're talking about here, allowing this kind of conduct to go unpunished or at least questioned by a jury. You know, we're not obviously moving for summary judgment here. We're asking that there be a trial and a jury be able to decide, after listening to the witnesses, what happened. And that's a reasonable request. I think Judge Sanis, with all due respect, who I have a lot of respect for, jumped the gun here. I think this thing has to go to trial. I think a jury has to hear the particular facts. And once again, I don't mean to be redundant, but this scares me. This scares me. Some policemen are going to read this. It's like, well, it's okay. And just go into a scene and start shooting at everybody. Hey. Why isn't it more reasonable to expect that a police department would, after an incident like this, take better care on screening and training inexperienced officers about how to handle crowd situations and fast decisions are necessary? Isn't that the right place as opposed to turning this into a constitutional violation? Can't we facilitate that going forward, more careful training about officers if they become aware of the fact that you just can't recklessly run into a scene and start shooting and hit innocent victims? Wouldn't that make the public safer? Wouldn't that make all of us safer? I mean, I'd feel safer knowing that. You know, I grew up in New York. I noticed some rough instances, and I know policing is a hard job. But if we allow the police to believe that, hey, you're all right. You just run in. You start shooting. You don't identify yourself. You shoot recklessly and maybe hit the wrong people. It's okay. It's not okay. None of us are safe that way. And if substantive due process is to mean anything, it should cover an instance like this. All right. Well, thank you both. We will reserve decision. Thank you, Your Honor. Good to see you.